In re Affidavit of BIAS.

No. 950485.

Supreme Court of Utah.

June 6, 1997.

Memorandum Decision

ZIMMERMAN, Chief Justice:

This decision, issued by Chief Justice Michael D. Zimmerman sitting by himself,[1] addresses the affidavit of bias filed by Denver C. Snuffer, Jr., the attorney for William Morton in the case of *Morton v. Continental Baking Co.*, 938 P.2d 271 (Utah 1997).

On April 8, 1997, this court issued a three-to-two decision in *Morton*, with the majority opinion authored by Justice Leonard H. Russon, reversing the court of appeals and holding that it had erred when it reversed the

_____

1. I wish to emphasize at the outset that I have not consulted other members of the Utah Supreme Court in passing upon this matter. This decision expresses only my individual views as a judge, not as the Chief Justice, as to the legal sufficiency of the affidavit of bias filed by Mr. Snuffer.

trial court's ruling dismissing Mr. Morton's case against Continental Baking Company for failure to comply with a trial court discovery order. Subsequently, Mr. Snuffer filed an affidavit of bias under rule 63(b) of the Utah Rules of Civil Procedure. In this affidavit, he alleged that Justice Russon was biased in favor of Hanson, Epperson & Smith, the law firm representing Continental Baking Company, because Justice Russon had been a member of that firm prior to becoming a judge on May 1, 1984. Mr. Snuffer sought to have Justice Russon disqualified. At about the same time, he also filed a petition for rehearing, seeking reconsideration of this court's April 8th decision.

Upon receiving this affidavit, Justice Russon followed the procedures outlined in rule 63(b) and assigned the matter of passing upon "the legal sufficiency of the affidavit" to me.[2] I then suspended any action on this petition for rehearing until the rule 63(b) proceeding was resolved, and on May 1, 1997, I issued an order directing Justice Russon to file an affidavit providing additional evidence regarding the allegations in Mr. Snuffer's affidavit of bias. In that order, I also directed Mr. Snuffer "to respond to the affidavit if he deems it necessary." Having received the affidavit from Justice Russon and a responsive affidavit from Mr. Snuffer, I now pass upon the "legal sufficiency" of the affidavit of bias filed by Mr. Snuffer.

■ Before addressing the substantive merit of the allegations raised in the affidavit of bias, I must first resolve whether the affidavit was timely filed. Rule 63(b) of the Utah Rules of Civil Procedure, which provides the substantive and procedural rules for filing an affidavit of bias, states in relevant part, "Every such affidavit ... shall be filed as soon as practicable after the case has been assigned or such bias or prejudice is known." *See also Madsen v. Prudential*

*Fed. Sav. & Loan,* 767 P.2d 538, 542–44 (Utah 1988). Here, Mr. Snuffer did not file the affidavit until after this court's opinion on the matter had been issued. Mr. Snuffer explains that he failed to file the affidavit earlier because he did not become aware of Justice Russon's past affiliation with Hanson, Epperson & Smith until after the opinion was issued. For the sake of argument, I accept the truth of this assertion. As there were fewer than ten days between the issuance of the opinion and the filing of the affidavit of bias, I conclude that the affidavit was timely, given the procedural posture of the case at that time. *Cf. Regional Sales Agency v. Reichert,* 830 P.2d 252 (Utah 1992). However, in the future, parties filing affidavits of bias are directed to provide more specific information regarding when and how they became aware of potential bias on the part of a judge. This information is necessary for determining whether an affidavit satisfies the timeliness requirement of rule 63(b).

■ I next consider whether the allegations raised in the affidavit of bias are legally sufficient to merit the disqualification of Justice Russon from *Morton.* First, I will set forth the general legal rules relating to what constitutes bias sufficient to mandate disqualification. Second, I will present the allegations of bias and the relevant facts. Finally, I will determine whether disqualification is required.

■ I begin by examining the applicable legal standard of what constitutes bias. I note at the outset that judges are presumed to be qualified. 46 Am.Jur.2d *Judges* § 218 (1994). Therefore, an affiant alleging bias on the part of a judge bears the burden of demonstrating that the judge is not qualified to act on the case. *Id.* It is true that a judge

2. Rule 63(b) provides that upon receiving an affidavit of bias, a judge shall proceed no further on the case, "except to call in another judge to hear and determine the matter." Utah R. Civ. P. 63(b). The rule further states:
If the judge against whom the affidavit is directed questions the sufficiency of the affidavit, he shall enter an order directing that a copy thereof be forthwith certified to another judge (naming him) of the same court or of a court of

like jurisdiction, which judge shall then pass upon the legal sufficiency of the affidavit. *Id.* Thus, only a judge on the Utah Supreme Court, other than Justice Russon, is qualified to pass upon the legal sufficiency of the affidavit. The rule also envisions that only a single judge shall "pass upon the legal sufficiency of the affidavit," even in the case of multiple-judge courts like the Utah Supreme Court.

must avoid hearing a case "in which the judge's impartiality might reasonably be questioned." Utah Code of Judicial Conduct Canon 3(E)(1). However, "no deduction of bias and prejudice may be made from adverse rulings by a judge." 46 Am.Jur.2d *Judges* § 219 (1994). In other words, the mere fact that a judge decides a case against a party may not be considered in determining bias.

As to what situations raise an inference of bias, both the Utah Code and the Code of Judicial Conduct provide some guidance. Section 78–7–1 of the Utah Code states:

> (1) Except by consent of all parties, no justice, judge, or justice court judge may sit or act in any action or proceeding:
>
> > (a) to which he is a party, or in which he is interested;
> >
> > (b) when he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of the common law; or
> >
> > (c) *when he has been attorney or counsel for either party in the action or proceeding.*

Utah Code Ann. § 78–7–1 (emphasis added). Canon 3(E) of the Code of Judicial Conduct provides in relevant part:

> (1) A judge shall enter a disqualification in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> > (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, a strong personal bias involving an issue in a case, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > (b) the judge had served as a lawyer in the matter in controversy, had practiced law with a lawyer who had served in the matter at the time of their association, or the judge or such lawyer has been a material witness concerning it;
> >
> > (c) the judge knows that the judge, individually or as a fiduciary, ... has an economic interest in the subject matter in controversy or in a party to the proceeding, or has any other more than de

minimis interest that could be substantially affected by the proceeding. . . .

I next set out the allegations and relevant facts. Mr. Snuffer alleges that Justice Russon is biased due to his past membership in Hanson, Epperson & Smith. He further alleges potential bias because Continental Baking Company may have been a client of the firm while Justice Russon was a partner in that firm and because Justice Russon could still be receiving compensation from the firm or have ongoing personal relationships with attorneys in that firm or with the secretary who certified a mailing at dispute in the case.

Mr. Snuffer's assertions regarding these last facts relating to Justice Russon's affiliation with Hanson, Epperson & Smith are speculative. The speculative nature of Mr. Snuffer's assertions might alone warrant finding the affidavit insufficient. But in the interest of addressing the merits, I issued an order on May 1, 1997, directing Justice Russon to provide additional factual information, including

> (i) whether he has an ongoing financial relationship with Hanson, Epperson & Smith, the firm that represented Continental Baking Company; (ii) whether he has maintained close personal relationships with members of that firm; (iii) whether he has a close personal relationship with the firm's secretary who certified a mailing at dispute in the case; (iv) whether he has previously represented Continental Baking Company as a client; and (v) whether Continental Baking Company was a client of the firm while he was a member.

Justice Russon responded with an affidavit. First, he explains that he was never a member of Hanson, Epperson & Smith; rather, he had been a member of Hanson, Russon & Dunn, a predecessor firm. The latter firm has undergone several name changes with corresponding changes in membership since Justice Russon's departure in 1984. As for financial interests, when Justice Russon terminated his relationship with the firm, he "received a settlement of any and all interests [he] had in that law firm. [He has] had no further financial interest whatsoever in that law firm or with any of its members since that settlement thirteen years

ago." As to the second and third questions contained in my order, Justice Russon states that he has "not maintained, and [does] not now have, a close personal relationship with any member of the firm ... nor [does he] have knowledge of[ ] the identities of the secretaries or other employees, presently employed, or employed in the past, by Hanson, Epperson & Smith, nor [does he] recognize the signature of the person who signed the mailing certificate in dispute." Finally, as to the fourth and fifth questions, Justice Russon states, "To the best of my knowledge, Continental Baking Company was never a client of Hanson, Russon & Dunn or its predecessors, nor do I recall Hanson, Russon & Dunn, or myself personally, having ever been retained to represent that company in any legal or other matter."

Mr. Snuffer filed an affidavit in response to Justice Russon's affidavit. Mr. Snuffer admits in his affidavit that the law firm "has undergone name changes[ ] and some personnel changes," but Mr. Snuffer concentrates his discussion on Terry Plant, the lead attorney for Continental Baking Company in its case against Morton. Mr. Snuffer states that Mr. Plant has been a member of the Hanson firm since 1981. Thus, Mr. Plant was hired while Justice Russon was at the firm and worked with Justice Russon for three years prior to Justice Russon's departure. Aside from his concern about Justice Russon's past relationship with Mr. Plant, Mr. Snuffer is also troubled by the nature of the appeal in *Morton*. Mr. Snuffer asserts that the resolution of *Morton* "turns on a question involving the conduct of the law firm Justice Russon once belonged to as a partner," thus raising particularly sensitive issues where bias might be critical.

█ I will proceed to determine whether the facts, as they stand after the final exchange of affidavits, are sufficient to require the disqualification of Justice Russon. In essence, the first of Mr. Snuffer's claims of bias boils down to an argument that a judge should never hear a case if the judge's former firm, or anyone with whom the judge was professionally associated, is representing one of the parties. I conclude that no reasonable inference of bias is raised merely because a judge hears a case in which a former firm represents one of the parties. *See* ABA Comm. on Professional Ethics & Grievances, Informal Op. 594 (October 22, 1962) (stating that judge was not precluded from sitting on case merely because judge's former firm participated in case as counsel). In Utah, as elsewhere, judges are often selected from the ranks of law firms. Though this practice is widely known, neither section 78–7–1 of the Utah Code nor canon 3(E)(1) of the Code of Judicial Conduct lists the presence of a judge's former law firm alone as grounds for disqualification. Because such a situation is likely to occur frequently and is certainly to be anticipated, and because writing a bright-line flat prohibition such as Mr. Snuffer seeks would be a simple solution, I conclude that the absence of such a rule indicates that no such ban was intended by either Code.

This conclusion is buttressed by the fact that section 78–7–1 and canon 3(E) both recognize that situations may exist where a judge sits on a case where a former law firm associate or client may be a participant, yet each specifies disqualification only in narrow circumstances. For example, section 78–7–1(1)(c) states that a judge should not act in an action "when he has been attorney or counsel for either party in the action or proceeding." Similarly, canon 3(E)(1)(b) requires disqualification if "the judge had served as a lawyer in the matter in controversy, had practiced law with a lawyer who had served in the matter *at the time of their association*, or the judge or such lawyer has been a material witness concerning it." Code of Judicial Conduct Canon 3(E)(1)(b) (emphasis added). The inclusion of such limiting language demonstrates that this provision was drafted narrowly to avoid disqualifying a judge merely because the judge had once practiced with a lawyer who is then appearing before the judge. Although it is true that canon 3(E) specifically states that its list does not cover all situations in which a judge should enter a disqualification, given the fact that canon 3(E) addresses situations where judges can sit on cases involving former associated lawyers, I conclude that the omission of a ban was deliberate. Therefore,

I conclude that in such a situation, it would be unreasonable to infer bias.

■ I want to make clear, however, that additional factors may make it appropriate for a judge to decline to hear a case involving his or her former law firm. These factors could include, inter alia, whether the judge continues to have a financial interest in the firm, whether the judge has maintained close personal relationships with members of that firm, whether a family member of the judge works for the firm, whether the judge had significant involvement with the client while a member of the firm, or whether the judge's association with the firm is particularly recent. See Utah Code Ann. § 78–7–1(1); Utah Code of Judicial Conduct Canon 3(E)(1); see also ABA Comm. on Professional Ethics & Grievances, Informal Op. 594 (October 22, 1962) (listing some factors that would make disqualification appropriate in case involving judge's former firm). No such factors are present here. Justice Russon no longer has any financial interest in the firm, he has not maintained close personal relationships with members of that firm or its employees, he did not represent Continental Baking Company in *Morton* or in any other matter, and it has been thirteen years since Justice Russon was a member of the predecessor firm.

Finally, I address Mr. Snuffer's second ground for inferring bias, his expressed concern regarding the nature of *Morton*. Mr. Snuffer asserts that our decision in *Morton* turns on a credibility determination concerning the conduct of Justice Russon's former firm, making the situation one fraught with unusual potential for bias. In his zeal to disqualify Justice Russon, I find that Mr. Snuffer has failed either to appreciate or to accurately represent the nature of the case and its posture before this court on certiorari. I recap the issue: The trial court issued an order on April 12, 1994, directing Mr. Snuffer, counsel for Morton, to comply with a deadline for discovery or face dismissal. The deadline was missed, and the trial court entered the threatened dismissal. Subsequently, Mr. Snuffer complained that he never received a copy of the April 12th order. The trial court found otherwise. This finding was based on the affidavit of a secretary of Hanson, Epperson & Smith, who certified that she mailed the order to plaintiff's counsel on April 12th. The trial court refused to reinstate the case. Morton appealed, and we poured the case to the court of appeals.

The court of appeals reversed the dismissal, finding that although Mr. Snuffer had failed to comply with the April 12th order, that noncompliance, as a matter of law, was not egregious enough to justify dismissal. In so holding, the court of appeals stated that it had "reviewed each of the issues raised by [Morton's counsel] regarding excuses for noncompliance with the trial court's discovery order, or reasons for extension of the court imposed deadline, and [had] found them to be without merit." Because one of those excuses was the factual claim of nonreceipt of the April 12th order, the court of appeals necessarily affirmed the trial court's factual conclusion that the April 12th order had been sent to Mr. Snuffer and that he had received it.

Continental Baking Company filed a writ of certiorari with this court, arguing that the court of appeals failed to give the trial court the appropriate deference in reviewing its decision to order dismissal. Mr. Snuffer's client did not cross-petition for certiorari, thus limiting the issues before us to the narrow one raised by Continental. Utah R.App. P. 49(a)(4); *see also Savage v. Educators Ins. Co.*, 908 P.2d 862, 864 n. 3 (Utah 1995) (declining to consider issues not set forth in petition for writ of certiorari); *Butterfield v. Okubo*, 831 P.2d 97, 101 n. 2 (Utah 1992) (explaining that when Utah Supreme Court exercises its certiorari jurisdiction, it "review[s] [the] decision of the court of appeals, not of the trial court"). After argument on the merits, we agreed with Continental Baking Company and reversed the court of appeals. Now, having earlier abandoned any claim of error in the court of appeals' affirmance of the trial court's factual finding that Mr. Snuffer received the April 12th order, Mr. Snuffer tries to characterize Justice Russon's majority opinion as having factually found that Mr. Snuffer had received the April 12th order. Mr. Snuffer argues that this "finding" by Justice Russon is incor-

rect given the three affidavits that Mr. Snuffer produced contradicting this finding. This mischaracterizes our ruling.

It is true that in the opinion authored by Justice Russon, we reversed the court of appeals' reversal of the trial court's dismissal of Mr. Morton's case for failure to comply with the trial court's discovery order. However, we did not reverse the court of appeals' ruling regarding whether Mr. Snuffer had received the April 12th order. Indeed, we did not even address it. As noted, that issue was not before us. Justice Russon merely recited the facts as found by the trial court and affirmed by the court of appeals. Therefore, the outcome of the case before this court turned on whether the court of appeals correctly concluded that dismissal was not justified as a matter of law, not on whether we believed that the disputed mailing was sent by Hanson, Epperson & Smith on April 12th. I therefore find no merit in Mr. Snuffer's second claim of bias.

For these reasons, I conclude that an inference of bias cannot be reasonably raised regarding Justice Russon's participation in *Morton v. Continental Baking Company.*