**2013 UT App 31**

# THE UTAH COURT OF APPEALS

JOHN VANDERMEIDE JR., PATSY J. VANDERMEIDE,
CHRISTIAN VANDERMEIDE, AND CARRIE VANDERMEIDE,

*Plaintiffs and Appellees,*

*v.*

JAMES WINSLOW YOUNG
AND ROBERT J. YOUNG,

*Defendants and Appellants.*

Opinion
No. 20110989-CA
Filed February 7, 2013

Second District, Bountiful Department
The Honorable Glen R. Dawson
No. 050801394

David S. Cook, Attorney for Appellants
Scott E. Isaacson and Justin W. Starr,
Attorneys for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion,
in which JUDGES CAROLYN B. MCHUGH
and STEPHEN L. ROTH concurred.

VOROS, Judge:

¶1     This case challenges the centuries-old adage that "good fences make good neighbors." The case arose from a dispute over a six-foot fence running east and west between two neighbors' residences. The neighbors on the south, John Vandermeide and Patsy J. Vandermeide (the Vandermeides), built the fence; the neighbor on the north, James Winslow Young, tore it down. The

Vandermeides prevailed in the ensuing litigation. James Winslow Young (Young) and Robert J. Young (collectively, the Youngs) appeal.[1] We agree with the Youngs that the trial court's findings appear to be internally inconsistent and remand for the court to reconcile them. In all other respects, we affirm.

BACKGROUND

¶2　John Vandermeide (Vandermeide) and his two sons built the fence ten years ago. Based on both a conversation with a neighbor who had recently had his land surveyed and on a metal post cemented into the ground, Vandermeide was "a hundred percent confident" that he knew where his property line was. But "to make sure [he] wasn't infringing on any property," Vandermeide built the fence several feet south of what he believed was the boundary.

¶3　For two years, Young said nothing about the fence. Then one day after church, he threatened to "knock it down." Vandermeide had the property surveyed, but the surveyor brought bad news: "The bad news is the fence is not on your property. It's in the middle of this area, called a no-man's land; it doesn't belong to Mr. Young and it doesn't belong to you. It's not in either one of your property descriptions."[2]

¶4　On April 1, 2004, Vandermeide and Young held a summit at the fence. Vandermeide told Young, "[I]f you're not absolutely happy with this, we'll be willing to take the fence out." In fact, Vandermeide had a crew lined up and a backhoe on site in the

---

1. The appeal was filed by James Winslow Young on his own behalf and as trustee of the Helen M. Stock Revocable Trust and by Robert J. Young as trustee of the Helen M. Stock Revocable Trust.

2. There seems to be no dispute that the last sentence of this quotation is an accurate statement of fact.

event Young insisted that the fence be moved. But Young responded, "Well, there'll be no need for that. . . . [A]s far as I'm concerned, the matter's closed." Vandermeide told the backhoe operator, "[Y]ou can turn your backhoe off because there's no need. We're not going to have to move the fence."[3]

¶5     Vandermeide and Young occasionally saw each other at church thereafter and exchanged pleasantries, but never discussed the fence. But on March 18, 2005, Patsy Vandermeide called the police because the fence had been broken apart—"it looked like a tornado came through there." Officers went to speak to Young, who said, "I just frankly got cheesed off so I went down there this morning with a tractor and a sledge hammer and I took that sucker out because it was on mother's property."

¶6     The Vandermeides sued on a variety of theories, including trespass to chattels. The Youngs counterclaimed and filed a third party complaint.[4] After a bench trial, the court awarded judgment to the Vandermeides based on their trespass to chattels claim in the amount of $3,600 plus interest at the statutory rate and attorney

---

3. The Youngs disputed this testimony at trial, but the court found the Vandermeides' testimony "most credible in regards to the April 1st meeting." "This factual finding was not properly challenged by [the Youngs,] nor is it clearly erroneous. Accordingly, this court is bound by the district court's finding and must accept it as true." *See State v. Applegate*, 2008 UT 63, ¶ 19, 194 P.3d 925.

4.  John, Patsy, Christian, and Carrie Vandermeide sued James Winslow Young, who tore down the fence. They also sued Helen M. Stock and Robert J. Young as trustees of the Helen M. Stock Revocable Trust, the record owner of the property occupied by James Winslow Young. These defendants counterclaimed and filed a third-party complaint against Viola W. Squires, a remote grantor of their property, and John Does 1–10. Viola Squires was dismissed from the action before trial.

fees under the bad faith statute. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2008). The court denied the Vandermeides' boundary by acquiescence claim and did not reach their remaining claims for relief. The court denied the Youngs' claims for reformation of deed, adverse possession, malicious prosecution, and trespass. The court also denied both parties' requests for punitive damages. The Youngs advance nine claims of error on appeal.


## ANALYSIS

¶7      First, the Youngs contend that the trial court failed to make findings of fact on all material issues presented by the litigants; specifically, they argue that the court failed to rule on their quiet title claim. This claim presents a question of law, which we review for correctness. *See Thompson v. Utah State Tax Comm'n*, 2004 UT 107, ¶ 9, 112 P.3d 1205.

¶8      "It is the duty of the trial court to find upon all material issues raised by the pleadings, and the failure to do so is reversible error." *LeGrand Johnson Corp. v. Peterson*, 420 P.2d 615, 616 (Utah 1966) (citation and internal quotation marks omitted). Furthermore, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58A." Utah R. Civ. P. 52(a).

¶9      Here, the Youngs did not object to the court's findings and conclusions on this basis, nor did they file a post-judgment motion asking the court to make additional findings. The claim is thus unpreserved, and we deny it on that ground. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 54–56, 99 P.3d 801.

¶10     In any event, we do not agree that the trial court failed to rule on a material issue. The Youngs sought to quiet title in themselves on two theories: adverse possession and reformation of deed. The trial court orally announced that it refused to "grant

quiet title to defendants based on any of the theories that they presented." It also concluded that "whatever legal theory the [Youngs] had to claim quiet title, in the Court's view it would be no excuse to tear the fence down and do damage to the property." While the trial court's written findings and conclusions do not expressly state that the court refused to quiet title in the Youngs, no other conclusion is possible from the court's ruling. *Cf. State v. Ramirez*, 817 P.2d 774, 787 (Utah 1991).

¶11    Second, the Youngs contend that the trial court erred in not granting them title to the disputed strip based on their reformation of deed claim. Succinctly stated, they assert that the Domans conveyed to the Squires all of Lots 3 and 4, two adjacent lots of equal size; that the Squires mistakenly conveyed to the Wendels less than all of Lot 3, leaving the Squires with a parcel in the shape of an inverted State of Oklahoma; that neither the Squires nor any intermediate grantors in the Youngs' chain of title intended to convey less than all of the north-south length of Lot 3 as described on the original plat map; and thus, looking to the intent of the grantors rather than the language of their grants, the disputed strip was conveyed from the Domans to the Squires to the Wendels to the Wendel Trust to the Keddingtons to Helen Stock and finally to the Helen M. Stock Revocable Trust, i.e., the Youngs. Further, the Youngs maintain that, by ruling that neither Viola Squires nor the Youngs nor the Vandermeides owned the panhandle, the court left it an isolated, unusable no-man's land, which the law abhors.[5]

¶12    "Reformation of a deed is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties." *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 36, 96 P.3d 935 (citation omitted). The two

---

5. The court rejected the Vandermeides' boundary by acquiescence claim, a ruling they do not appeal. Accordingly, there seems to be no dispute at this stage that the Vandermeides do not own the strip.

grounds for reformation of a deed are "mutual mistake of the parties and ignorance or mistake by one party, coupled with fraud by the other party." *Id.* A "'[m]utual mistake of fact may be defined as error in reducing the concurring intentions of the parties to writing.'" *Id.* ¶ 37 (quoting *Naisbitt v. Hodges*, 307 P.2d 620, 623 (Utah 1957)). The proponent of reformation has "the burden of proving by clear and convincing evidence that there was a mutual mistake of fact." *FDIC v. Taylor*, 2011 UT App 416, ¶ 47, 267 P.3d 949 (citation and internal quotation marks omitted); *see also Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976) (noting that a deed regular in form is presumed to convey the entire fee simple title, or at least whatever title the grantor has, and "one who attacks a deed has the burden of proving otherwise by clear and convincing evidence"). "Extrinsic evidence is admissible to assist in determining the intent of the parties." *RHN Corp.*, 2004 UT 60, ¶ 38 (citing 66 Am. Jur. 2d *Reformation of Instruments* § 114 (2001)). The "standard of review for a trial court's findings of fact for cases in equity is the same as for cases at law, namely the clearly erroneous standard." *Id.* ¶ 35.

¶13    As stated above, the Youngs had the burden to prove reformation by clear and convincing evidence. However, the trial court ruled that they had the burden to prove reformation of deed by only a preponderance of the evidence—an error in the Youngs' favor. The court then correctly stated that the Youngs were required to prove either mutual mistake or mistake on the part of one and fraud or inequitable conduct on the part of the other. The court continued that "the deed itself is the best representation of the previous landowner's intent . . . ." This is correct. *See id.*, ¶ 44 ("To determine the parties' intent, we look first to the terms of the . . . deed."). In fact, reformation will not be granted absent clear and convincing proof precisely because of "the presumption that the instrument correctly evidences the agreement of the parties . . . ." *Weight v. Bailey*, 147 P. 899, 903 (Utah 1915) (citing 2 Pomeroy, Eq. Jur. (3d Ed.) § 859).

¶14    The court found that the Youngs had "failed to prove fraud or mutual mistake by the parties to any of the deeds in their chain

of title," because "[t]here was no intent shown of George and Nellie Wendel[] who received the property from [the] Squires." Such a finding will be set aside only if it is clearly erroneous. *See* Utah R. Civ. P. 52(a); *RHN*, 2004 UT 60, ¶ 53. A finding is clearly erroneous "'only if the finding is without adequate evidentiary support or induced by an erroneous view of the law.'" *State v. Walker*, 743 P.2d 191, 193 (Utah 1987) (quoting Wright & Miller, Federal Practice & Procedure § 2585 (1971)). Therefore, we will not disturb a finding unless it is "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *Id.*

¶15    The Youngs have not demonstrated that the trial court's finding is clearly erroneous. Indeed, the Youngs' brief does not acknowledge the court's stated basis for its rejection of their deed reformation theory. This is a potentially fatal defect in the Youngs' appellate challenge. *See Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (rejecting appellate claim on the ground that it did not address the actual basis for the district court's ruling).

¶16    Nor have the Youngs demonstrated that the court's finding is "without evidentiary support." Although they have set forth in considerable detail the evidence that they believe refutes the court's finding, they have not acknowledged the evidence supporting the court's finding. *See* Utah R. App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."); *see also West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct. App. 1991) (explaining the marshaling requirement).

¶17    The Youngs' brief relies heavily on the testimony of Marie Wendel. She was asked at trial whether, "as one of the trustee grantors" in the conveyance from the Wendel Trust to the Keddingtons, she intended to retain ownership of "any little strip along the south side." She responded, "We just thought the boundary line went halfway through the block. That was always

understood." She then reiterated, "I've always understood the boundary line was halfway through the block. . . . My whole life we just always figured it was halfway through the block." Asked the basis for this understanding, she testified "[J]ust common sense." This testimony of George and Nellie Wendel's daughter lends inferential support to the Youngs' characterization of the grantees' intent in the Squires' conveyance to the Wendels.

¶18    On the other hand, the Youngs' brief ignores testimony from this same witness when questioned explicitly concerning her parents' understanding. When asked if she ever recalled "overhearing any discussions between either of your parents, . . . between them and the Miles or anybody else about what was considered to [be] the boundary line between backyards there," Marie Wendel responded, "[N]o, we just kind of knew whose trees were on which side." When pressed again to recall whether she ever overheard any discussions "about where people thought the backyard lines met," she answered, "I don't remember that, no." This is the most relevant evidence presented at trial concerning the Wendels' understanding of the property line when they acquired the property. It directly supports the trial court's finding that the Youngs failed to establish the Wendels' intent as grantees in 1949. Yet it is never mentioned in the Youngs' brief.

¶19    In sum, the Youngs have failed to acknowledge the basis of the court's finding and have failed to marshal significant evidence supporting it. Moreover, testimony from their own witness supports the challenged finding. The Youngs have thus not carried their burden of demonstrating that the challenged finding was clearly erroneous.

¶20    However, we agree with the Youngs that the trial court's findings appear to be inconsistent. The trial court refused to reform any deeds in the Youngs' chain of title and left the title to their property "as it appears in their deed." This ruling would seem to leave title in Viola Squires, the last person in the chain of title whose deed included the disputed strip. Yet three years before

trial, the court dismissed Squires on the ground that, having sold the parcel "with the understanding that [she and her husband] were selling their entire [north-south] interest in the property and were not retaining any interest," Squires now "has no right, title, interest, or estate in" the strip. This apparent inconsistency leaves title to the property in limbo even though all potential owners appear to have been involved in this litigation.

¶21    Where the court's findings are internally inconsistent on a material point, reversal and remand are appropriate. *See Bailey-Allen Co., Inc. v. Kurzet*, 876 P.2d 421, 426 (Utah Ct. App. 1994). Accordingly, we remand the case for the trial court to reconcile these apparently inconsistent findings and to take whatever additional action the court deems necessary to that end.

¶22    Third, the Youngs contend that "if this court remands this case for new trial on the land ownership issue, this court should rule that Young was/is entitled to present adverse possession evidence including evidence of payment of real property taxes." To establish title to property by adverse possession, the claimant "has the burden of proving . . . open, notorious, and hostile" possession for seven years and payment of property taxes for that period. *See Marchant v. Park City*, 788 P.2d 520, 523–24 (Utah 1990) (footnote citations omitted); Utah Code Ann. § 78B-2-208(2) (LexisNexis 2008). Because our decision today does not contemplate a new trial on the issue of adverse possession, we need not reach this claim. Moreover, because the Youngs have not demonstrated that the trial court erred in ruling that the Youngs failed to prove that their possession of the disputed strip was open, notorious, and hostile, this claim fails regardless of whether they paid taxes.

¶23    Fourth, the Youngs contend that the Vandermeides were not entitled to an award of damages for Young's removal of the fence. The Youngs argue that the trial court granted the Vandermeides judgment on their trespass claim despite ruling that the Vandermeides did not own the property from which Young removed the fence, thus contravening the rule that "the essential

element of a claim for trespass is invasion of the plaintiffs['] property." This argument misstates the Vandermeides' claim and the court's ruling. The Vandermeides brought, and the trial court granted, a claim for trespass *to chattels*. The trial court determined that the Vandermeides owned the fence, not the strip of land on which it stood. Accordingly, this claim lacks merit.

¶24   Fifth, the Youngs contend that they are entitled to compensatory and punitive damages against the Vandermeides on the Youngs' trespass claim. This claim presupposes that the Youngs own the disputed strip. Because they have not demonstrated ownership, this claim fails.[6]

¶25   Sixth, the Youngs contend that the Vandermeides were not entitled to an award of attorney fees under the bad faith statute. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2008). Under that statute, "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . ." *Id.* For the purposes of that statute, a finding of bad faith must be based on the absence of one or more of the following three factors: "(1) An honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will, . . . hinder, delay, or defraud others." *Cady v. Johnson*, 671 P.2d 149, 151–52 (Utah 1983) (citation and internal quotation marks omitted).

---

6.   Moreover, as the Vandermeides argued in their Reply to Counterclaim and Cross-Claim, the Youngs' trespass claims against the Vandermeides appear to be time-barred. *See* Utah Code Ann. § 78-12-26 (Michie 1996) (requiring a trespass action to be brought within three years of discovery of cause of action) (current version at *id.* § 78B-2-305 (LexisNexis 2012)).

¶26 A "finding of bad faith turns on a factual determination of a party's subjective intent." *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 9, 122 P.3d 556. It is thus "within the trial court's discretion to determine bad faith under this section." *Canyon Country Store v. Bracey*, 781 P.2d 414, 421 (Utah 1989) (interpreting the predecessor statute to section 78B-5-825). We review such a determination under the clearly erroneous standard. *Still Standing Stable*, 2005 UT 46, ¶ 8.

¶27 The trial court granted attorney fees to the Vandermeides under the bad faith statute on the Youngs' malicious prosecution and trespass counterclaims. The court's "concern mainly focus[ed] on the malicious prosecution claim that was stated in the counterclaim." With respect to that claim, the court stated that "there were never facts that would give rise to a claim for malicious prosecution absent a criminal proceeding being instituted," a fact that the Youngs' counsel conceded. *See Neff v. Neff,* 2011 UT 6, ¶ 52, 247 P.3d 380 (stating that an element of the tort of malicious prosecution is that the defendant initiated or procured the initiation of criminal proceedings against an innocent plaintiff). The Youngs do not challenge or even acknowledge this primary basis for the trial court's finding of bad faith. Accordingly, we affirm the trial court's award of the Vandermeides' attorney fees incurred in defending against the Youngs' malicious prosecution claim.

¶28 With respect to the trespass counterclaim, the court explained that it was awarding fees because "both surveyors made it clear through their work that defendant did not own the property in question where the fence was built, yet despite hearing that from both surveyors the defendant pursued counterclaim for . . . trespass." The court continued, "It's my best view that those actions are without merit and were not asserted in good faith because [there] were not fact[s] sufficient that could have ever proven either of those claims."

¶29 In effect, the Youngs contend that, while their reformation of deed claim ultimately did not prevail, the clear implication of the

court's assignment of bad faith with respect to that claim is that they "should not have defended [against] the Vandermeide complaint nor sought to quiet title nor to recover trespass damages, but instead had a clear legal duty to abandon the strip to the Vandermeides."

¶30   The Youngs' argument does not fairly meet the trial court's stated basis for its ruling. The award was not based on the Youngs' defense against the Vandermeides' claim nor was it based on their quiet title claim. In fact, the trial court stated, "I'm not granting fees on the quiet title claims."[7] The Youngs' statement that the trial court thus expected them to "abandon the strip to the Vandermeides" is inaccurate. With respect to the trespass counterclaim, it appears that counsel for the Youngs never requested relief on the basis of trespass at trial, or for that matter mentioned their trespass claim at all, in closing argument or otherwise. In short, the Youngs have not demonstrated that the trial court's finding of bad faith in connection with their trespass counterclaim was clearly erroneous.

¶31   Seventh, the Youngs contend that the trial court erred in not awarding attorney fees to the Youngs under the bad faith statute. The Youngs claim the Vandermeides acted in bad faith by (1) pressing a "no-man's land" theory, (2) asserting damages could be awarded without deciding property ownership, (3) claiming a wire fence existed without factual support or encouraging a surveyor to depict a nonexistent wire fence, (4) insisting that the trial court refuse to consider or ignore undisputed evidence, (5) refusing to substitute Young as a trustee, and (6) pressing the

---

7. The court recognized that the quiet title claim and the trespass claim "tie together so much" that separating out fees incurred in connection with one from fees incurred in connection with the other was difficult. After making this statement, the court and counsel met in chambers to discuss the matter further. That discussion is not included in the record on appeal.

court to hold Young in contempt for recording deeds properly placing a corrected description of the border at the Vandermeides' property boundary. This claim is unpreserved, *see 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801, and unsupported by citation to the record, *see* Utah R. App. P. 24(a)(9). Moreover, the Youngs do not explain how a successful claim could be, as required by the bad faith statute, "without merit." *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2008). The Youngs' seventh contention thus fails on all three grounds.

¶32     Eighth, the Youngs contend that Young, current co-trustee of the Helen M. Stock Revocable Trust, should have been substituted as the real party in interest for Robert J. Young, the former co-trustee. The Youngs suggest that the trial court violated rule 25(c) of the Utah Rules of Civil Procedure when it denied their post-trial motion for substitution.[8] That rule states, "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

¶33     The Youngs do not explain how the trial court violated this rule by allowing the action to be continued against the original party. An issue is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). In such a circumstance, the appellate court will not assist the appellant "by formulating arguments on its behalf or translating its problematic arguments into plausible ones." *B.A.M. Dev., LLC, v. Salt Lake County*, 2012 UT 26, ¶ 35 n.8, 282 P.3d 41. We deny the Youngs' eighth claim on this basis.

---

8. Although the substitution of trustees occurred before trial, the Youngs did not file their motion for substitution until nearly nine months after trial.

¶34    Ninth, the Youngs contend that this court should direct that all proceedings on remand be heard by a different district court judge. Specifically, the Youngs argue that the trial judge in this case was biased against them. As proof of bias, the Youngs assert without citation to the record that "the trial court should not press a party to do what the law does not require in order to settle" and that "[s]ettlement efforts not being successful, the court should not have then required Young to do that which the law does not require."

¶35    This claim fails on three independent grounds. First, the claim is unpreserved. This court will not "consider the issue of judicial bias or prejudice when it is raised, as in the present case, for the first time on appeal." *Wade v. Stangl*, 869 P.2d 9, 11 (Utah Ct. App. 1994). Second, the claim is unsupported by citation to the record and is therefore inadequately briefed. *See* Utah R. App. P. 24(a)(9). And third, the claim lacks merit. Insofar as we are able to determine, the allegation of bias rests solely on the trial court's rulings. But "'no deduction of bias and prejudice may be made from adverse rulings by a judge.'" *In re Affidavit of Bias*, 947 P.2d 1152, 1154 (Utah 1997) (Zimmerman, C.J., sitting alone) (quoting 46 Am. Jur. 2d Judges § 219 (1994)).

¶36    Finally, the Vandermeides seek attorney fees on appeal on two independent grounds. First, they assert that the Youngs' appeal is frivolous under rule 33 of the Utah Rules of Appellate Procedure. "[A] frivolous appeal . . . is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R. App. P. 33(b). We do not agree that the Youngs' appeal was frivolous. Indeed, what the Youngs call the "core issue" in this case—whether they are entitled to reformation of their deed—was fairly debatable.

¶37    In addition, the Vandermeides seek attorney fees on appeal on the ground that the Youngs' brief "is full of baseless accusations of judicial misconduct and bias" and that "the whole tenor of [the Youngs'] brief is that no reasonable person could have ruled the

way the trial court did in this case." The Vandermeides compare the Youngs' brief on appeal to that stricken by our supreme court in *Peters v. Pine Meadow Ranch Home Ass'n*, 2007 UT 2, 151 P.3d 962, pursuant to rule 24(k) of the Utah Rules of Appellate Procedure. That rule provides that "[a]ll briefs under this rule must be . . . free from burdensome, irrelevant, immaterial or scandalous matters. Briefs which are not in compliance may be disregarded or stricken, . . . and the court may assess attorney fees against the offending lawyer." Utah R. App. P. 24(k).

¶38    In *Peters*, appellate counsel's brief was "replete with attacks on the integrity of the court of appeals panel that decided the cases below." *Peters*, 2007 UT 2, ¶ 23. For example, that counsel accused the panel of choosing a result based on "prejudice, bias, corruption[,] or whatever, and then work[ing] backwards to the evidence, . . . fabricat[ing] the evidence they need to make their decisions plausible." *Id.* ¶ 12. He also compared the panel's opinion to a reported massacre of innocent civilians by United States Marines during the war in Iraq. *Id.* ¶ 18.

¶39    Here, the Youngs' brief does contain intemperate passages that in the interest of professionalism, accuracy, and advocacy should have been redacted in the editing process. But on the whole, the Youngs' brief avoids the worst excesses of the *Peters* brief. We therefore decline to strike it or to award sanctions.

CONCLUSION

¶40    We remand the case for the trial court to reconcile the apparently inconsistent findings and to take whatever additional action the court deems necessary to that end. In all other respects, the judgment of the trial court is affirmed. No fees are awarded on appeal.

_____