**2019 UT App 106**

## THE UTAH COURT OF APPEALS

DEIDRE SUE JANSON,
Appellant,
*v.*
JEFFREY ALAN JANSON,
Appellee.

Opinion
No. 20170541-CA
Filed June 20, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 164906327

Jamie Carpenter, Attorney for Appellant

Kara L. Barton and Ashley Wood, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and DIANA HAGEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Deidre Sue Janson appeals the district court's order denying her motion to set aside a written stipulation (the Stipulation) entered in her divorce action against Jeffrey Alan Janson. We affirm.

BACKGROUND

¶2    The parties entered into the Stipulation following mediation on November 14, 2016, to resolve the issues in their

divorce. As part of the Stipulation, Deidre[1] agreed to pay Jeffrey alimony of $2,500 per month for eighteen months and $1,500 per month for an additional eighteen months.

¶3    The Stipulation awarded the marital home to Jeffrey. Deidre was awarded half of the equity in the home, less $45,000 that constituted Jeffrey's inherited funds. The Stipulation also divided the equity in the parties' vehicles, requiring Deidre to pay Jeffrey $13,178 from her share of the parties' bank accounts to equalize the vehicle equity disparity.

¶4    The parties had a number of retirement funds and accounts. Regarding the retirement, the parties agreed as follows:

> 12. [Deidre] has the following retirement accounts: Utah Retirement in the amount of approximately $72,440; General Electric in the approximate amount of $100,435; Roth IRA in the approximate amount of $18,252; FDIC in the approximate amount of $16,719 and $17,431; and Utah Pension in the amount of $15,281.
>
> 13. [Jeffrey] has the following retirement accounts: Fidelity in the approximate amount of $22,012; Bernstein in the approximate amount of $18,305.
>
> 14. The above retirement accounts will be divided equally between the parties. In addition [Deidre] has a premarital IRA in the approximate amount of $17,682 which is her separate property.

---

1. Because the parties share the same last name, we refer to them by their first names to avoid confusion, meaning no disrespect by the apparent informality.

15. [Jeffrey's] Alliant Technical Systems Pension plan which will be divided pursuant to the Woodward formula.

16. The parties will share equally the cost of any qualified domestic relation order.

¶5 On January 12, 2017, Deidre moved to set aside the Stipulation on the ground that there was not a meeting of the minds regarding various provisions in the agreement. She asserted that she "did not receive [Jeffrey's] financial disclosures until the morning of mediation and was not able to consult with her attorney prior to mediation." She asserted that because her Utah pension was listed with its approximate value alongside the other retirement accounts, her understanding was that Jeffrey was to receive only half of the listed $15,281 partial lump sum value of that pension rather than half of the entire monthly payment amount as determined by a qualified domestic relations order (QDRO). According to Deidre, the total value of Jeffrey's half of the pension if the monthly payment option were utilized would amount to approximately $80,000. Deidre claimed that had she understood that Jeffrey would be entitled to half of the entire Utah pension, she would not have agreed to provisions granting Jeffrey premarital equity in the home. She pointed to the lack of specific dates for the accounts to be divided and the impracticality of preparing a QDRO for every retirement account as support for her assertion that the Stipulation should be interpreted as granting Jeffrey only half of the stated partial lump sum value of her Utah pension account.[2]

---

2. Deidre also challenged other provisions of the Stipulation that she asserted were inartfully drafted. Specifically, she claimed that there was a mathematical error in the calculation of the vehicle equity and that a lack of language regarding the parties'

(continued…)

¶6    Jeffrey opposed the motion to set aside the Stipulation, pointing out that his financial declaration was provided to Deidre well in advance of mediation and that she was represented by counsel at the mediation. He also explained the discrepancy between how the Stipulation described the division of his pension account and how it described the division of Deidre's—his account had been partially accrued prior to the marriage, whereas Deidre's had been accrued entirely during the period of the marriage. He asserted that Deidre was aware that an equal division of her pension could result in him receiving half of the monthly payments rather than half of the partial lump sum payout value because her own financial declaration included a summary of the various payout options. Jeffrey also asserted that only three QDROs, at maximum, were necessary to divide the retirement accounts.

¶7    In responding to Jeffrey's memorandum in opposition to her motion, Deidre raised additional issues impacting the Stipulation's alimony award—she indicated that after filing the motion to set aside, she was involuntarily terminated from her job without notice, that the loss of her job precluded her from continuing to pay alimony, and that Jeffrey had become eligible to draw on his social security and retirement accounts to support himself. She asserted that these changes in circumstances justified setting aside the Stipulation.

¶8    Following a hearing, the district court denied Deidre's motion. The court found that both parties understood that

---

(…continued)
incomes and needs in the alimony provision had the potential to preclude a future modification. However, she did not present argument or evidence on these issues at the evidentiary hearing, and the district court ultimately made no ruling on them. *See infra* ¶¶ 22–25.

Deidre's Utah pension had the potential for an annuitized benefit. The court determined that the language in the Stipulation dividing the pension equally was clear as to how the retirement accounts would be treated and contained sufficient detail to enforce the Stipulation. The court stated that it was reasonable to anticipate that additional details would be filled in when the QDROs were prepared. The court also determined that issues related to Deidre's alleged change in circumstances should be handled separately as a petition to modify.

¶9    Deidre now appeals.


ISSUES AND STANDARDS OF REVIEW

¶10    Deidre asserts that the Stipulation is unenforceable because there was no meeting of the minds regarding various aspects of the Stipulation.[3]

---

3. Deidre also asserts that the district court erred in determining that the Stipulation was unambiguous. Although the court stated that it considered the Stipulation's language to be "clear," it did not make an explicit ruling regarding whether the Stipulation was ambiguous. In fact, the district court's consideration of extrinsic evidence suggests that the court actually did consider the Stipulation to be ambiguous, since the purpose of considering extrinsic evidence is to clarify ambiguous terms in the contract. *See Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995) (explaining that if a court determines that a contract is ambiguous, the next step is to admit extrinsic evidence "to clarify the ambiguous terms"). We therefore review only the district court's evaluation of the extrinsic evidence and its determination that Jeffrey's interpretation of the Stipulation was more reasonable, that there was a meeting of the minds

(continued…)

> Whether the parties had a meeting of the minds sufficient to create a binding contract is an issue of fact, which we review for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made.

*LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 13, 221 P.3d 867 (quotation simplified).

¶11   Deidre also asserts that the district court erred in declining to consider her substantial change in circumstances argument as a basis for setting aside the Stipulation and instead determining that a petition to modify was the necessary route for her to pursue this argument. Whether a district court erred in accepting and enforcing a proffered stipulation is reviewed for an abuse of discretion. *See In re N.M.*, 2018 UT App 141, ¶ 17, 427 P.3d 1239.

## ANALYSIS

### I. The District Court Did Not Clearly Err in Rejecting Deidre's Assertion That There Was No Meeting of the Minds.

¶12   "It is a basic principle of contract law there can be no contract without a meeting of the minds." *Granger v. Granger*, 2016 UT App 117, ¶ 14, 374 P.3d 1043 (quotation simplified). "A binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced." *LD III, LLC v. BBRD, LC*, 2009 UT

---

(…continued)
regarding how the retirement was to be divided, and that the Stipulation was enforceable.

App 301, ¶ 14, 221 P.3d 867 (quotation simplified). "Whether there is a meeting of the minds depends on whether the parties actually intended to contract, and the question of intent generally is one to be determined by the trier of fact." *Terry v. Bacon*, 2011 UT App 432, ¶ 21, 269 P.3d 188 (quotation simplified).

¶13  "[I]n divorce cases, the ability of parties to contract is constrained to some extent by the equitable nature of the proceedings . . . ." *Granger*, 2016 UT App 117, ¶ 15. "Because retirement funds are prospectively marital property if acquired or contributed to during the marriage, the distribution of such marital funds must fit within the overarching principle of equity unless the parties have freely and knowingly agreed to a different result that has been appropriately sanctioned by the court." *Id.* ¶ 16. Nevertheless, "it is not the court's prerogative to step in and renegotiate the contract of the parties. Instead, courts should recognize and honor the right of persons to contract freely and to make real and genuine mistakes when the dealings are at arms' length." *Id.* ¶ 14 (quotation simplified).

A.    Retirement Funds

1.    The Court Did Not Err in Accepting Jeffrey's Interpretation of the Stipulation.

¶14  At the evidentiary hearing, the district court considered both parties' testimonies regarding their understanding of the Stipulation and their intent regarding the division of their retirement funds. Having considered this evidence, the district court found that both parties understood that Deidre's Utah pension had the potential for an annuitized benefit and that the Stipulation was clear that the listed retirement accounts were to be divided equally between the parties. Deidre asserts that this conclusion was clearly erroneous because it is inconsistent with the principle that retirement funds that can be "presently valued" should be equally divided.

¶15 As a general matter, equitable division of a defined benefit plan is accomplished by the *Woodward* formula[4] and equitable division of a defined contribution plan is accomplished by dividing the value contributed during the marriage. *Granger v. Granger*, 2016 UT App 117, ¶ 23, 374 P.3d 1043. While Deidre's pension fund had a "partial lump sum" payout option—which was listed as the "approximate value"[5] in the Stipulation—it also had a monthly payment option. Because pension funds are presumptively divided according to the *Woodward* formula, an interpretation of the Stipulation that requires dividing the entire fund rather than only the partial lump sum amount is more consistent with equity. It is also the most logical approach in light of Deidre's own financial declaration, which acknowledged that her Utah pension had a monthly payment option.

¶16 Deidre also asserts that Jeffrey himself testified that he believed the "approximate" amount listed for Deidre's pension, rather than the entire pension, would be divided equally. But the record does not support Deidre's characterization of Jeffrey's testimony. At the hearing, Jeffrey was asked, "So it was your understanding that [the] specific value you listed would be, *at least with 401-Ks or whatnot*, would be divided. You would get half of that value?" (Emphasis added.) Jeffrey responded, "It

---

4. The *Woodward* formula grants a spouse one-half of the "portion of the retirement benefits represented by the number of years of the marriage divided by the number of years of the [acquiring spouse's] employment." *Woodward v. Woodward*, 656 P.2d 431, 433–44 (Utah 1982).

5. Incidentally, the fact that the parties listed only the "approximate" values of the various retirement funds also undermines Deidre's assertion that the parties intended to effectuate the division based on the listed values rather than the actual values of the funds.

would be half the value as identified by the amounts listed in the stipulation." Jeffrey was asked specifically about the division of the 401(k)s, not the pension. Thus, his answer to this question cannot be construed as a statement that he expected and agreed that the pension would be divided only according to the amount listed in the Stipulation.

¶17    Indeed, Jeffrey testified that based on the document Deidre produced in her financial declaration outlining the various options for the distribution of the Utah pension, he understood that Deidre's pension could be taken either "as a partial lump sum" or as "monthly payments" and that he "would have a choice" either to take half of the monthly payments or to add half of the partial lump sum to his share of the distributions of the other IRA and 401(k) accounts. Deidre also testified that she knew that a monthly payment could be an option for payout of her pension. Thus, the court's interpretation of the Stipulation is supported by the evidence and is not clearly erroneous.

2.      The Court Did Not Err in Enforcing the Stipulation.

¶18    Deidre also asserts that the Stipulation should not be enforced because it was not equitable. She argues that the district court should have considered the Stipulation as a whole and recognized that she had given up other valuable assets in exchange for treating the pension as a lump sum rather than as a monthly benefit calculated by utilizing the *Woodward* formula. However, there is nothing on the face of the Stipulation to indicate that such an exchange was made. The Stipulation states that Jeffrey was granted an extra $45,000 of equity in the home because he had contributed inherited funds to the home, not in exchange for the retirement.

¶19    Even if the court had accepted Deidre's argument, it is by no means clear that she gave up anything in exchange for the pension, let alone something of comparable value such that the

court should have recognized the retirement division as inequitable. Presumably, Jeffrey would have contested Deidre's assertion that the inheritance funds were comingled, and she has not established that she was equitably entitled to share in the portion of the equity gained by investing the inheritance funds. Further, her half of that portion of the equity was significantly smaller than the amount of the pension Jeffrey would be giving up by accepting half of the partial lump sum value rather than half of the monthly payments. Additionally, Deidre herself asserted only that her belief regarding the pension made her "a little more flexible" on the issue of the allegedly comingled inheritance, not that she bargained for an exchange of one for the other.

¶20 To require the district court to examine and evaluate the Stipulation to the degree recommended by Deidre would be to undermine the parties' right to contract freely. While courts should ensure that the provisions of a divorce stipulation comply with "the overarching principle of equity," *Granger v. Granger*, 2016 UT App 117, ¶ 16, 374 P.3d 1043, they are also to "respect[] and give[] considerable weight" to the parties' agreement, *Maxwell v. Maxwell*, 796 P.2d 403, 406 (Utah Ct. App. 1990). Thus, weighing every provision of a stipulation against every other to ensure that the parties have reached a perfectly fair agreement is beyond the scope of the court's mandate.

¶21 Indeed, the court's equity analysis generally focuses "not on the contract's subject matter, but rather on whether the contract was fairly negotiated and does not result in an outcome so severely one sided that it prevents the district court from fulfilling its equitable obligations." *Ashby v. Ashby*, 2010 UT 7, ¶ 21, 227 P.3d 246. We see nothing in the record to suggest that the district court was presented with such a situation. Both parties were represented by counsel, and the terms of the Stipulation were not so one-sided as to give the court reason to believe that the parties' agreement had violated the principles of

equity. Thus, the court did not exceed its discretion in determining that the Stipulation's division of the retirement funds was enforceable.

B.    Deidre's Arguments Regarding Alimony and Vehicles Were Not Preserved for Appeal.

¶22    On appeal, Deidre renews the arguments made in her motion to set aside that there was no meeting of the minds with respect to the Stipulation's provisions regarding alimony and the division of equity in the vehicles. However, the district court made no ruling on these issues.[6]

¶23    "[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. "[O]nce trial counsel has raised an issue before the trial court, *and the trial court has considered the issue*, the issue is preserved for appeal." *Id.* (emphasis added).

¶24    We agree with Jeffrey that Deidre's reference to the alimony and vehicle issues in her motion to set aside was not sufficient to preserve them for appeal when she did not present evidence or argue these issues to the district court at the

---

6. Deidre asserts that the court's ruling that "[i]n order to have a contract, the Court doesn't need perfect clarity on every factual point" constituted a ruling on all the issues she raised. However, Deidre omits vital language from the court's ruling. The court actually stated, "In order to have a contract, the Court doesn't need perfect clarity on every factual point *that might fill in a QDRO here*." (Emphasis added.) Thus, it is clear from the context that the court's ruling contemplated only the issues Deidre raised with respect to the retirement, not the alimony and vehicle issues.

evidentiary hearing and the district court did not rule on them. "[T]he mere mention of an issue in the pleadings, when no supporting evidence or relevant legal authority is introduced at trial in support of the claim, is insufficient to raise an issue at trial and thus insufficient to preserve the issue for appeal." *LeBaron & Assocs., Inc. v. Rebel Enters., Inc.*, 823 P.2d 479, 483 (Utah Ct. App. 1991). Further, a party may waive an issue by relinquishing or abandoning it before the district court, either expressly or impliedly. *State v. Johnson*, 2017 UT 76, ¶ 16 n.4, 416 P.3d 443.

¶25    "The fundamental purpose of the preservation rule is to ensure that the district court had a chance to rule on an issue before an appellate court will address it." *Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶ 42, 361 P.3d 63. Because the district court did not rule on the alimony and vehicle issues, and Deidre made no attempt to remedy that omission before raising the issues on appeal, her arguments regarding these issues are unpreserved, and we will not consider them for the first time on appeal. *See Vandermeide v. Young*, 2013 UT App 31, ¶¶ 8–9, 296 P.3d 787 (holding that a challenge to a district court's failure to rule on an issue raised in the pleadings was not preserved for appeal, because the appellants did not object to the court's findings or file a post-judgment motion requesting additional findings).

  II. Deidre Will Have the Opportunity to Pursue Her Change of
  Circumstances Argument in the Context of a Petition to Modify.

¶26    Deidre also argues that the district court erred in declining to consider the change in her employment status as a basis for setting aside the Stipulation before a final order was entered. Although Deidre filed her motion to set aside prior to the entry of the final Decree of Divorce (the Decree), the court declined to consider whether the Stipulation should be modified based on a change of circumstances, stating, "[O]ur procedural rules contemplate that a petition to modify has to be made when

the parties reached this state of the proceeding. The Parties reached a resolution in this case and new situations are handled differently."

¶27 The district court has the discretion to reconsider a prior ruling any time before a final judgment is entered. *See* Utah R. Civ. P. 54(b); *see also Hafen v. Scholes*, 2014 UT App 208, ¶ 3, 335 P.3d 396 (per curiam); *Durah v. Baksh*, 2011 UT App 159, ¶ 5, 257 P.3d 458 (per curiam). However, to seek a modification of a divorce decree, a movant must show "a substantial change of circumstances occurring *since the entry of the decree* and not contemplated in the decree itself." *Gardner v. Gardner*, 2012 UT App 374, ¶ 38, 294 P.3d 600 (emphasis added) (quotation simplified).

¶28 The change in Deidre's employment status occurred after the Stipulation was signed but before the Decree was entered. Thus, Deidre asserts that the district court's refusal to reconsider the alimony portion of the Stipulation as part of her motion to set aside was an abuse of discretion because it put her in a catch-22—the court would not let her seek a modification prior to the entry of the Decree, but she would be precluded from seeking one afterward because her alleged change in circumstances occurred before the entry of the Decree.

¶29 We agree with Deidre that the district court, contrary to its own assertion, had the discretion to reconsider whether to accept the parties' Stipulation as to alimony prior to the entry of the Decree, since the alleged change in circumstances occurred prior to a final judgment being entered. This issue was relevant to the court's consideration of whether the Stipulation complied with the "overarching principle of equity." *See Granger v. Granger*, 2016 UT App 117, ¶ 16, 374 P.3d 1043. The court may have determined that the Stipulation as to alimony was no longer equitable in light of the change in circumstances and that the parties would not have entered into the Stipulation as to

alimony had they been aware that Deidre would lose her employment.

¶30 However, while considering Deidre's alleged substantial change of circumstances at an earlier stage of the proceedings may have been desirable as a matter of judicial economy, Deidre has not been prejudiced by the district court's refusal to do so. Deidre filed a Petition to Modify on January 9, 2018, which is currently pending in the district court. The district court gave Deidre leave to pursue her substantial change of circumstances argument subsequent to the entry of the Decree, and Jeffrey has conceded that she should be allowed to do so. These circumstances avoid the catch-22 scenario Deidre feared. Because Deidre has not actually been precluded from raising her substantial change of circumstances claim, any error on the part of the district court in declining to consider her motion to set aside the alimony portions of the Stipulation on that basis was harmless.

CONCLUSION

¶31 The district court's interpretation of the Stipulation's retirement provisions is supported by the evidence presented at the evidentiary hearing. Deidre's arguments concerning other aspects of the Stipulation were not preserved, and we therefore do not consider them. Further, while the district court could have considered Deidre's arguments concerning her alleged change in circumstances in the context of the motion to set the Stipulation aside, the court's refusal to do so was not prejudicial. Deidre will be permitted to pursue her claim in the context of the petition to modify already filed with the district court. Accordingly, we affirm the district court's denial of Deidre's motion to set aside the Stipulation.

_____